IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NATHAN STURDIVANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:09-cv-586 |
| ) | |
| PETE GEREN, ) | |
| Secretary of the Army, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the Court is Defendant's Motion for Summary Judgment (Dkt. No. 57). After reviewing the motion and accompanying memorandum, the Court finds that there are no genuine issues of material fact and thus Defendant is entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56(c).

I. **Background**

A. Plaintiff's Employment

On October 19, 2005, Plaintiff was hired by the United States Army to be a Child and Youth Program Associate for a "Homework Lab" on an Army Installation in Heidelberg, Germany. Defendant's Memorandum in Support of Summary Judgment ("DSJ") Ex. 1 at 8-9; 2. Plaintiff worked at School Age Services ("SAS"), which was a component of Child and Youth Services ("CYS"). DSJ Ex. 1 at 8-9. Plaintiff's job was to assist students attending the Department of Defense schools on the installation with their homework in an after-school program. Plaintiff's position was only part-time, and he was subject to a probationary period of employment that

1

lasted until October 2006. Additionally, Plaintiff's employment was contingent on the completion of a satisfactory background check. Plaintiff acknowledged in writing that he understood this and signed documents authorizing an investigation into his background. Specifically, these documents "authorize[d] the Federal agency conducting the background investigation to disclose the record of [his] background investigation to the requesting agency for the purpose of making a determination of suitability or eligibility for a security clearance." DSJ Ex. 2-3; 20.

The homework lab which Plaintiff worked in implemented an after-school program funded by the Boys and Girls Club of America. Pursuant to that program, Army employees in the homework lab were authorized to provide students with 'points' as a reward for completing their homework assignments. DSJ Ex. 1 at 203-204; 21. In early 2006, under some indication that not all homework associates were awarding points in the same manner, CYS officials decided to consult the Boys and Girls Club of America and determine how the points system was intended to operate. Upon consulting the examples provided by the Boys and Girls Club, CYS standardized their points system accordingly. DSJ Ex. 1 at 203-204. Also in early 2006 CYS officials chose to designate a 'Lead Associate' in the homework lab. On January 12, 2006 they chose Jennifer Sweet for this position. Ms. Sweet was not paid anything extra as a result of her designation. DSJ Ex. 1 at 215-216.

Based on reports about an interaction between Plaintiff and German officials, on March 17, 2006, the Army placed Plaintiff on administrative leave with pay pending the outcome of an informal investigation into certain allegations of misconduct. DSJ Ex. 9. On May 16, 2006, after the investigation, Army officials served upon Plaintiff a Notice of Proposed Separation for Cause. Specifically, the SAS Director, Dowain Gessey, articulated that the incident between

Plaintiff and German utility workers was not "consistent with the requirements of living and working in a foreign nation and caused him to question [Plaintiffs] suitability for working with children." DSJ Ex. 7.

On June 20, 2006, the Director of Army Morale, Welfare, and Recreation ("MWR"), Carol Ferguson, decided not to separate Plaintiff from the Army's employ. Ms. Ferguson concluded that although "there was serious concern about his chosen behavior with members of the local national workforce," there was not enough evidence to warrant separating Plaintiff. DSJ Ex. 1 at 109. Upon his return to SAS, on June 21, 2006, Plaintiff requested that he be transferred to a new position. Army officials honored Plaintiffs request and transferred Plaintiff to the Child Development Center ("CDC") where he was to serve as a Program Associate. Plaintiff retained the same pay and grade after his transfer. DSJ Ex. 1 at 17-18.

Plaintiff began missing work as soon as he started at the CDC in late June 2006. In regards to his absences Plaintiff claimed that he was having health issues and would need medical leave. DSJ Ex. 1 at 55-62. Plaintiffs supervisor, Laura Roberts, informed Plaintiff that he would need medical documentation to substantiate the reasons for his absence. Plaintiff Amended Complaint ("PAC") Ex. L; DSJ Ex. 19.

Around September of 2006 Army officials received Plaintiffs full and comprehensive background check. The NCIS report showed that Plaintiff had been arrested or convicted on numerous occasions, and that he had two outstanding warrants for his arrest in Georgia. Additionally, several of Plaintiffs previous places of employment could not be confirmed, and he had a certain number of financial judgments against him. DSJ Ex. 6.

After learning about the findings of Plaintiffs background investigation, Army officials convened a Program Review Board ("PRB") to look into Plaintiffs suitability for employment.

The PRB met on November 16, 2006, and Plaintiff both appeared and provided a substantive response to the PRB. The six members of the PRB, all of whom were employed in other components of the Army Garrison at Heidelberg, voted unanimously to terminate Plaintiff's employment. Plaintiff was allowed to plead his case again on November 29, 2006 when the Army formally proposed his separation from employment. The Army ultimately concluded that Plaintiff's history was incompatible with his employment, and he was finally terminated on January 12, 2007. DSJ Ex. 2; 23-24.

Also in November of 2006, a Bar to Entry letter ("bar letter") was issued against Plaintiff, barring him from entry to all facilities under the operational control of the U.S. Armed Forces in Europe.

B. Plaintiff's Allegations of Discrimination

Plaintiff alleges in his Opposition to Defendant's Motion for the Summary Judgment that the following were the acts of discrimination and retaliation against him for which he has brought this action:

- Defendant "unlawfully appointed my co-worker my supervisor to harass me and force my resignation"
- Defendant "cut students [*sic*] incentive points to disrupt the homework lab and harassment [*sic*] to force plaintiff's resignation"
- "A 90 day leave of absence/suspension one hour after defendant was informed about pending investigations from authorities in Washington DC"
- "defendant transferred me to an inferior position at the same pay grade after I protested the move"

4

- Defendant's'[r]refusal of FMLA after plaintiff presented 3 critical medical conditions from two medical doctors'

- 'Commander secretly banned plaintiff to evade the EEOC Administrative Judge assessment and plaintiff amending Equal Employment Opportunity complaint to serial harassment'

- Defendant's "unlawfully disqualification from employment based on unsubstantiated arrests." Defendant failed "to allow plaintiff proper time to substantiate proper dispositions as indicated by the Department of Justice Federal Bureau of Investigation Information Services Division."

C. Administrative Proceedings

On April 27, 2006, Plaintiff filed a formal Equal Employment Opportunity Complaint alleging that he was the victim of discrimination based on race, sex, and reprisal and then subsequently amended his complaint twice during the administrative process. After investigation Plaintiff's administrative complaint was forwarded to the Equal Employment Opportunity Commission ('EEOC') for adjudication. On August 15, 2007, the EEOC Administrative Judge held that Plaintiff had not shown any evidence of discrimination. On October 1, 2007, the Army rendered its Final Agency Action which adopted the Administrative Judge's holding.

II. **Procedural History**

Plaintiff is *pro se*. On January 14, 2008 Plaintiff filed a complaint in the U.S. District Court for the District of Columbia against Pete Geren in his capacity as Secretary of the Army alleging discrimination and retaliation in violation of Title VII. The case was transferred to the Eastern District of Virginia on May 26, 2009. On June 23, 2009 Defendant filed a motion for

summary judgment. On July 23, 2009 the Court granted Plaintiff's motion to amend complaint which rendered Defendant's motion for summary judgment moot. Plaintiff filed his amended complaint on August 11, 2009. On September 11, 2009 Defendant filed another motion for summary judgment. The Plaintiff filed a second motion to amend complaint on October 19, 2009. On October 23, 2009 the Court denied Plaintiff's motion to amend complaint for a second time and heard argument on Defendant's motion for summary judgment. The Court took the motion under advisement.

### III. Standard of Review

#### A. Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has held that Rule 56(c) mandates the entry of summary judgment, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party must then go beyond the pleadings and mere allegations to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 323. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

#### B. *Prima Facie* Case of Discrimination and Retaliation

Under the Federal Anti-Discrimination Statutes, a Plaintiff must establish that he was the victim of intentional discrimination or retaliation either through direct evidence or through circumstantial evidence via the framework set for by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because Plaintiff cannot show any direct evidence that any of the actions that he alleges were taken against him were motivated by discrimination or retaliatory animus, he must satisfy the elements set forth in *McDonnell Douglas* to prove his claim.

The elements that Plaintiff must prove in order to make out a *prima facie* case are slightly different depending on whether the claim is for discrimination or for retaliation–in this case, Plaintiff seems to be alleging both. A *prima facie* case of discrimination requires the Plaintiff to establish the following: 1) that he was a member of a protected class; 2) he was subjected to an adverse employment action; 3) that circumstances surrounding the employment action were motivated by unlawful considerations. *Munson v. Evans*, 2004 WL 3321482, at *3 (E.D. Va. Sept. 27, 2004) (citing *Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 58), *aff'd*, 122 F. App'x 646 (4th Cir. 2005). As to the retaliation claim, Plaintiff must demonstrate the following: 1) that he engaged in protected activity; 2) the employer took adverse employment action against him; and 3) a causal connection exists between the protected activity and the asserted adverse action. *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003).

Plaintiff must prove that he suffered an adverse employment action in order to make out a claim for discrimination and retaliation. In general, "not everything that makes an employee unhappy is an adverse action." *Settle v. Baltimore County*, 34 F. Supp. 2d 969, 989 (D. Md. 1999), *aff'd*, 203 F.3d 822 (4th Cir. 2000). Actions that are "nothing more than routine, day-to-day work occurrences [that do not] adversely affect [the employee's] job position or

7

compensation" are not actionable. *Green v. Fairfax County Sch. Bd.*, 832 F. Supp. 1032, 1040 (E.D. Va. 1993), *aff'd*, 23 F.3d 400 (4th Cir. 1994). However, what actually qualifies as an adverse employment action varies slightly depending on whether it is a claim for discrimination or for retaliation. With respect to pure discrimination claims, an action related to the workplace context cannot serve as the basis of a discrimination action without evidence that the practical consequences of the action were an adverse effect on the "compensation, terms, conditions, or benefits" of the employment. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). As to claims for retaliation, the Supreme Court has held, at least for private employees,[1] that the level of adversity necessary for a retaliation claim is lower than that required to sustain a claim for discrimination. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). In particular, the Supreme Court held that a retaliation plaintiff must demonstrate that "a reasonable employee would have found the challenged action materially adverse," which "means [that] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. The Court notes, however, the Fourth Circuit has held, even after *Burlington*, that poor performance evaluations and removal from an alternate work schedule do not satisfy the materially adverse requirement. *Parsons v. Wynne*, 221 F. App'x 197, 199 (4th Cir. 2007).

A *prima facie* "causal connection" is either "direct evidence that an adverse employment action would not have happened, but for the prior protected activity," *Nasis-Parsons v. Wynne*, 2006 WL 1555913 at *3 (E.D. Va. June 1, 2006) (citing *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365-66 (4th Cir. 1985)), *aff'd Parsons v. Wynne*, 221 F. App'x 197; or

---

[1] Defendant contends that this more lenient standard does not apply to Government employers; however, the Court does not need to reach that issue as it finds that Plaintiff has failed to prove that he was subject to an adverse employment action even under the more lenient standard.

8

'circumstantial evidence showing that 'Defendant had knowledge of the protected activity and that the temporal proximity between the employer's knowledge of protected activity and the [adverse action] are very close." *Nasis-Parsons*, 2006 WL 1555913 at *3 (quoting *Bullard v. Panasonic Corp. of America*, 418 F. Supp. 2d 802, 814 (E.D. Va. 2006) (internal citations omitted)), *aff'd Parsons v. Wynne*, 221 F. App'x 197. As temporal proximity fades, the inference of causal connection weakens. *See Dow v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ('A lengthy time lapse . . . negates any inference that a causal connection exists.') While there is no bright-line rule, a three-to-four month delay has been held to be too long to establish a causal connection. *See Clark County Sch. Dist. V. Breeden*, 532 U.S. 268, 273-74 (2001) (internal citations omitted).

    C.    Burdens of Proof and Production

The ultimate burden of 'persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). The burden of production in a federal discrimination and retaliation case shifts according to *McDonnell Douglas*, 411 U.S. 793. First, Plaintiff bears the burden of establishing, by a preponderance, a *prima facie* case of discrimination. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). After Plaintiff establishes a *prima facie* case, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory/nonretaliatory, reason for its action. *Id.* If the employer sets forth a legitimate nondiscriminatory/nonretaliatory explanation for the action, the plaintiff must then show that the employer's proffered reasons are pretextual or his claim will fail. *Id.*

IV.    **Discussion**

A. Appointment of a Lead Associate in the Homework Lab

Plaintiff's initial charge of discrimination and retaliation is that CYS officials appointed Ms. Sweet to be the Lead Associate in the homework lab. Plaintiff alleges that Ms. Sweet was appointed to be his supervisor and that the CYS officials placed Ms. Sweet into that position to harass him and to force his resignation.

The record makes clear that Ms. Sweet was not Plaintiff's superior. According to Army personnel in charge of the homework lab, Ms. Sweet's designation as Lead Associate was neither a promotion nor a position in which she served as Plaintiff's supervisor. She was not paid anything extra as a result of her designation, and the position was not even an official one of any type. She was merely responsible for mentoring the other homework associates in the lab. DSJ Ex. 1 at 215-216.

Plaintiff did not lose any pay or benefits from his job from Ms. Sweet being named Lead Associate–the standard for an action qualifying as adverse for a claim of discrimination; and no reasonable employee would have been dissuaded from making or supporting a charge of discrimination merely because management designated another employee to mentor other part-time associates for no additional pay–the standard for an action qualifying as adverse for a claim of retaliation. The Court therefore finds that the designation of Ms. Sweet as Lead Associate does not qualify as an adverse employment action. *See Flaherty v. Gas Research Inst.*, 31 F.3d 451, 457 (7th Cir. 1994) (holding that the fact that a reporting relationship may have bruised Plaintiff's ego is insufficient to constitute an adverse action under the ADEA); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1216 (10th Cir. 2008) (holding similarly under Title VII).

B. Changes to the Number of Points Children Could Receive

Plaintiff next alleges that he was discriminated and retaliated against when the CYS

officials chose to standardize the points that students could receive for completing their homework assignments. Affidavits submitted by Defendant show that it was complaints by employees of CYS and children in the program about Plaintiff providing inflated points for the children, including points for simply washing down the table, which led CYS officials to consult with the Boys and Girls Club of America in order to better standardize the program. The goal of the officials was merely to ensure consistency in the awarding of points. DSJ Ex. 1 at 203-204. It is clear that this action–which applied to all homework associates, not just Plaintiff–did not have any impact on the terms or conditions of Plaintiff's employment and no reasonable employee would have been dissuaded from making or supporting a charge of discrimination based on it. Thus, the Court finds that the decision of CYS officials to change the way homework associates could award points does not qualify as an adverse action for either a claim of discrimination or a claim for retaliation.

 C. The 90 Day Paid Leave of Absence

Plaintiff next charges that he was discriminated and retaliated against when the Army chose to place him on administrative leave, *with pay*. The courts have held that placing an individual on paid administrative leave does not constitute an adverse employment action in the discrimination context or in the retaliation context, even post-*Burlington Northern*. See *Joseph v. Leavitt*, 465 F.3d 87, 91 (2nd Cir. 2006) (finding that placement of employee on paid administrative leave pending completion of his criminal case did not constitute adverse employment action); *Breaux v. City of Garland*, 205 F.3d 150, 157-58 (5th Cir. 2000) (finding that a police officer did not suffer any adverse action by being placed on paid administrative leave when he retained his job and had not been demoted or transferred to a less desirable job); *Von Guten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) (finding that an employer's placement

11

of an employee on short-term administrative leave with pay to allow time for internal investigation was not an adverse action), *abrogated on other grounds by Burlington Northern*, 548 U.S. 53 (2006); *Nichols v. Southern Illinois Univ.*, 510 F.3d 772, 787 (7th Cir. 2007) (finding that state university police officer did not suffer materially adverse employment action in the retaliation context when he was placed on paid administrative leave pending results of his fitness-for-duty physiological examinations); *Grice v. Baltimore City*, 2008 WL 4849322, at *8 (D. Md. Nov. 5, 2008) (finding that suspension with pay of a county employee pending investigation did not constitute an adverse action for a retaliation claim). The Court finds that the Army's decision to put Plaintiff on paid administrative leave did not have any impact on the terms or conditions of Plaintiff's employment since he was allowed to return to work without demotion or reduction in pay. Additionally, the Court agrees with the other circuits that have addressed the issue, that no reasonable employee would have been dissuaded from making or supporting a charge of discrimination if he was put on paid administrative leave. Therefore, the Court finds that Plaintiff was not subject to an adverse employment action as required for a claim of discrimination or retaliation.

Furthermore, even if the Court did find that placing Plaintiff on paid administrative leave was an adverse action, the Army had valid nondiscriminatory and nonretaliatory reasons for doing so. The record shows that in February 2006, German citizens employed by a gas company reported that Plaintiff became aggressive and insulting toward them in a dispute over the gas meter at his German residence. According to the utility workers' report, Plaintiff referred to them as "Dirty Nazis," (an action which is a crime under German law), and began shouting and cursing at them. DSJ Ex. 6. The Court finds that based on this incident, the Army had every reason to place Plaintiff on leave pending investigation.

D. Plaintiff's Transfer to the CDC

Plaintiff also claims that he was discriminated and retaliated against when the Army transferred him to a new position after he returned from his paid leave. Plaintiff argues that this new position was a demotion, even though he clearly admits that his pay grade remained the same. DSJ Ex. 1 at 18. The Court however finds that the record is clear that Plaintiff was not demoted. DSJ Ex. 1 at 119-121. Additionally, Plaintiff was the one who requested to be moved; it was a voluntary transfer. The Army was under no obligation to grant Plaintiff's request for transfer at all. The Fourth Circuit has held that even an *involuntary* transfer, as long as the individual retains the same pay and benefits, does not count as an adverse employment action for a claim of discrimination. In *Boone v. Goldin*, 178 F.3d 253 (4th Cir. 1999), the court held:

> [A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action . . . .

*Id.* at 256-57. The fact that Plaintiff was unhappy with the reassignment, even though he was the one who asked to be reassigned, does not make the transfer an adverse employment action. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). When courts have addressed the issue of involuntary transfer in the retaliation context, they have similarly held, even after *Burlington Northern*, that such reassignment did not constitute an adverse employment action. *See Shannon v. Virginia Dept. of Juvenile Justice*, 2007 WL 1071973 at *3-4 (E.D. Va. April 4, 2007). The Court finds that it is only logical that if involuntary transfers without reduction in pay are not adverse employment actions, then clearly requested, or voluntary, transfers where there is no reduction in pay is not an adverse employment action for either a discrimination or retaliation claim.

E. The Army's Request for Medical Documentation from Plaintiff

13

Plaintiff further alleges that the Army discriminated and retaliated against him by requesting that he provide medical documentation verifying his need to be absent from work and by not granting him leave under the Family and Medical Leave Act ("FMLA") or the anti-discrimination statutes. The law under the FMLA is clear that an employer is entitled to request medical documentation to support a claim of illness. *See* 29 U.S.C. §2613(b); *see also Brown v. Trans World Airlines*, 127 F.3d 337, 342-43 (4th Cir. 1997). Furthermore, that Fourth Circuit has held that "[a]n employer may enforce generally applicable employment policies against employees without creating a cause of action" under the federal anti-discrimination statutes. *Wells v. Gates*, 2009 WL 1991212 at *5 (4th Cir. July 10, 2005) (internal citations omitted); *see Valles-Hall v. Ctr. for Nonprofit Advancement*, 481 F. Supp. 2d 118, 155 (D.D.C. 2007) (denying Title VII retaliation claim where employee failed to provide further medical documentation to support a sick leave request in accordance with company policy).

The record shows that the CDC policies regarding absences and request for leave are clear. DSJ Ex. 19. In this case, CDC personnel actually chose to *not* enforce its policies in order to give Plaintiff further opportunities to comply. DSJ Ex. 12. The record indicates that Plaintiff's attendance was a significant problem from the moment he began his position at the CDC and that he failed to provide adequate medical documentation explaining his need to be absent from work. DSJ Ex. 1 at 122-126. Plaintiff asserts that he submitted "3 critical medical conditions provided by two doctors" to justify his absences. The record shows that Plaintiff was seen by two different doctors. Plaintiff submitted two documents from a Doctor Akbik dated July 28, 2006 in which the doctor acknowledges that he examined Plaintiff and recommended surgery. PAC Ex. L. However, neither note says anything about Plaintiff needing to miss work, how long he would be out, etc–all elements specifically required under CDC policy. The only reference to

14

Plaintiff's need to miss work was a handwritten note by Plaintiff himself at the bottom of one of the letters which stated that he would need an indefinite leave of absence. *Id.* The Plaintiff also submitted an FMLA form filled out by a second doctor which discusses knee pain from which the Plaintiff was suffering. *Id.* This letter was dated September 1, 2006, two months after Plaintiff had first begun missing work and after Ms. Roberts had first requested medical documentation for Plaintiff's absences. However, whether Plaintiff did finally submit a valid request for leave is irrelevant to Plaintiff's claim of discrimination and retaliation which is based on the CDC's *request* for medical documentation. The Court finds that the fact that the CDC continued to ask for medical documentation despite Plaintiff blatantly ignoring the standard leave policy which applied to all employees cannot possibly be considered motivation of unlawful considerations.

F.   Plaintiff's Bar Letter

Plaintiff next challenges the bar letter that the Army entered against him in November 2006, which prevented him from entering any United States military installation in Europe. DSJ Ex. 25-26. In order to assert a claim for discrimination, a plaintiff must first exhaust all administrative remedies. 42 USCA § 2000e-5(f). While Plaintiff in this case did file an administrative claim with the EEOC, he filed it in April of 2006, and therefore could not have been alleging anything regarding the bar letter which was issued more than six months later. Because Plaintiff did not exhaust administrative remedies as to his claim of discrimination for the bar letter, he is limited to making a claim of retaliation. As discussed previously, in order to make out a *prima facie* claim for retaliation, a plaintiff has the burden of demonstrating that there is a causal connection between the protected activity and the asserted adverse action. Courts have routinely held that "[a] lengthy time lapse between the employer becoming aware of the

protected EEO activity and the alleged adverse employment action negates the inference that a causal connection exists between the two." *Orenge v. Veneman*, 218 F. Supp. 2d 758, 763 (D. Md. 2002). Regarding specific time frames that negate causation, the Fourth Circuit has held that absent other evidence of retaliation, four months between the adverse action and a plaintiff's protected activity is insufficient to state a prima facie case of retaliation. *See Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006). If the two activities are not sufficiently close in time, a plaintiff must provide evidence of other acts of retaliatory animus during the intervening period in order to establish the necessary causal connection. *See, e.g. Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). In the current case, the time period between when Plaintiff filed his EEOC complaint and the entry of the bar letter against him is six months. The Court finds that pursuant to holdings of the Fourth Circuit, six months is too lengthy of a period of time to establish the necessary causation, *see Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001), and that Plaintiff has failed to sufficiently allege any other retaliatory acts between the filing of his EEOC complaint and the issuing of the bar letter.

    G.    Plaintiff's termination from Army employment

Lastly, Plaintiff disputes his termination from Army employment. As with his challenge to the bar letter, Plaintiff is limited to a claim of retaliation since he did not exhaust his administrative remedies as to a claim of discrimination (because he was terminated after he filed his EEOC complaint). In his reply to Defendant's motion for summary judgment, Plaintiff specifically takes issue with the fact that, as he describes it, he was unlawfully terminated based on "unsubstantiated arrests." First, as with the bar letter, Plaintiff is unable to show a causal connection between his filing of the EEOC complaint, in April 2006, and his termination, eight months later in January 2007; and is therefore unable to make a *prima facie* case of retaliation.

Additionally, even if the Court found that there was a causal connection between Plaintiff's protected activity and his termination from his Army employment, the Army had more than ample legitimate, nondiscriminatory reasons for firing Plaintiff. The background check on Plaintiff revealed that his criminal record contained several arrests and charges for criminal conduct, including a conviction for the unlawful use of a weapon, an arrest for aggravated assault, forgery, two instances of battery, and alcohol-related offenses. DSJ Ex. 6 at 8-10. While Plaintiff frames these run-ins with the law as "unsubstantiated arrests," there is no doubt that the Army had every right to terminate Plaintiff from his employment, which was centered around work with *children*, based on his criminal record. This, along with well-substantiated evidence that Plaintiff, on more than one occasion, had addressed German officials as Gestapo and Nazis–which is a violation of German criminal law–DSJ Ex. 6; and the fact that Plaintiff had more than two months of unexcused absences gave the Army more than sufficient justification for firing Plaintiff. The Court further finds that there is no evidence to show that CDC did not have legitimate reasons for terminating Plaintiff from his employment with the Army.

## V. Conclusion

For the foregoing reasons, the Court finds that there are no genuine issues of material fact, and thus the Defendant is entitled to summary judgment under Fed. R. Civ. P. 56(c).

November 19, 2009
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

17